UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

KURTIS JAMES VANDERMOLEN,

        Defendant.
_____/

Case No.: 1:22-CR-00171

Hon. Robert J. Jonker
U.S. District Judge

PLEA AGREEMENT

This constitutes the plea agreement between Kurtis James VanderMolen and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>Plea to Information</u>. Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Felony Information charging bank fraud in violation of Title 18, United States Code, Section 1344(2) and money laundering in violation of Title 18, United States Code, Section 1957.

2. <u>Defendant Understands the Crimes</u>.

<u>Count 1</u>. In order for Defendant to be guilty of violating Title 18, United States Code, Section 1344(2), the following must be true: (1) Defendant knowingly executed a scheme to obtain any of the money, funds, or property owned by or under the control of a bank by means of false or fraudulent pretenses, representations, or promises; (2) the scheme included a material misrepresentation or concealment of a material fact; (3) Defendant acted with the intent to deceive or cheat someone for the purpose of either causing a financial loss to another or bringing about a financial gain for himself; and (4) the bank was federally insured.

Count 2. In order for Defendant to be guilty of violating Title 18, United States Code, Section 1957, the following must be true: (1) Defendant knowingly engaged in a monetary transaction; (2) the monetary transaction was property derived from specified unlawful activity (here, bank fraud); (3) the property had a value greater than $10,000; (4) Defendant knew the transaction was in criminally derived property; and (5) the monetary transaction took place within the United States.

3. Defendant Understands the Penalties.

Count 1. The statutory maximum that the Court can impose for a violation of Title 18, United States Code, Section 1344(2) is the following: 30 years of imprisonment; a five-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

Count 2. The statutory maximum that the Court can impose for a violation of Title 18, United States Code, Section 1957 is the following: 10 years of imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the amount of the criminally derived property involved in the transaction; and a mandatory special assessment of $100.

Defendant agrees to pay the special assessments at or before the time of sentencing unless Defendant affirmatively demonstrates to the Court that Defendant lacks the ability to pay.

4. Mandatory Restitution (MVRA). Defendant understands that he will be required to pay full restitution as required by law. The parties currently believe that the applicable amount of restitution is approximately $170,002, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

5. Supervised Release Defined. Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements.

Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6. <u>Asset Forfeiture and Financial Accountability</u>.  Defendant agrees to disclose to law enforcement officials the whereabouts of, the Defendant's ownership interest in, and all other information known to Defendant about, all assets, money, or property of any kind, derived from or acquired as a result of, or used to facilitate the commission of Defendant's illegal activities.

Defendant further agrees to forfeit to the United States the sum of $170,002, which represents the proceeds Defendant obtained as a result of his commission of the bank fraud offense charged in Count 1 of the Felony Information.

Defendant consents to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). Defendant acknowledges that the proceeds he obtained, directly or indirectly from the bank fraud offense charged in Count 1 of the Felony Information were spent on living expenses and other assets he no longer possesses.  As such, Defendant agrees that his criminal proceeds cannot be located upon the exercise of due diligence and have been commingled with other property which cannot be divided without difficulty.

The U.S. Attorney's Office agrees to submit a restoration request to the Department of Justice Money Laundering and Asset Recovery Section for the application of any proceeds from such forfeited property towards Defendant's restitution order.  Defendant acknowledges that the Department of Justice Money Laundering and Asset Recovery Section has the sole authority to grant or deny the restoration request and that the submission of such a request by the U.S. Attorney's Office does not guarantee that such request will be granted.

Defendant is the sole owner of two CZ firearms with serial numbers UC11369 and UC12145, which are in the lawful custody of the United States. Defendant acknowledges that as a convicted felon, Defendant will have no right to possess the firearms, either actually or constructively.  Defendant hereby waives and abandons all right, title, and interest in the listed firearms.  Defendant waives, releases, and withdraws any claim that Defendant has made with respect to the firearms and ammunition, and waives and releases any claim that Defendant might otherwise have made to them in the future.  Defendant consents to the destruction of the firearms. Defendant waives any right Defendant might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the government might take, in its sole discretion, to carry out the abandonment, disposition, and destruction of the firearms. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the firearms, including any such claim for attorney fees and litigation costs.  Defendant agrees to hold the United States, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, disposition, and destruction of the firearms.

If abandonment is not feasible, Defendant consents to the entry of a preliminary order of forfeiture concerning the firearms at or before the time of sentencing, and agrees to not contest a civil forfeiture action to forfeit the firearms, and agrees not to assist any other individual in filing a claim to the firearms.  Defendant acknowledges that by pleading guilty to felony offenses, he will become a prohibited person and cannot legally possess a firearm in the future.

7. <u>Factual Basis of Guilt</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

On July 23, 2020, Defendant electronically signed and submitted an application for a first-draw Paycheck Protection Program ("PPP") loan to an FDIC-insured lender, Cross River Bank, for a fictitious business: Breakout Strategies Corporation ("Breakout Strategies"). In the application, Defendant knowingly and falsely stated that Breakout Strategies was a legitimate business established in January 2020 that had eleven employees. As part of the application, Defendant also submitted fraudulent bank statements and other records to falsely make it appear as though Breakout Strategies was a real business.

On August 5, 2020, Defendant electronically signed and submitted a U.S. Small Business Administration ("SBA") Borrower Application Form (SBA Form 2483) to Cross River Bank, which form included a number of knowingly false statements, including that Breakout Strategies (1) was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes; and (2) would use the PPP funds for eligible expenses.

On August 7, 2021, Cross River Bank, relying on Defendant's materially false loan applications and related documents and statements, deposited $100,641 in first-draw PPP loan proceeds in a Breakout Strategies credit union account that Defendant opened in Kent County, in the Western District of Michigan. Defendant used the first-draw PPP loan proceeds for personal expenses and purchases. On September 1, 2020, for example, Defendant wrote a $18,752 check (check number 1105) from the Breakout Strategies account at Consumers Credit Union to make the final payment on a 2010 BMW 650i convertible. Defendant knew that the entirety of the $18,752 constituted proceeds of his bank fraud.

On February 10, 2021, Defendant electronically submitted an application for a second-draw PPP loan for Breakout Strategies. In the application, Defendant again falsely represented that Breakout Strategies was a legitimate company with actual employees. As part of this application, Defendant submitted fraudulent bank statements, fraudulent tax records, and fraudulent wage and hour records that Defendant claimed to have submitted to the State of Michigan.

On February 18, 2021, Defendant electronically signed and submitted an SBA Second Draw Borrower Application Form (SBA Form 2483) to Cross River Bank, which form included a number of knowingly false statements, including that Breakout Strategies (1) was in operation on February 15, 2020; (2) realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time periods in 2019 and 2020; and (3) used its first-draw PPP loan proceeds only for eligible expenses.

On February 22, 2021, Cross River Bank, relying on Defendant's materially false loan applications and related false documents and statements, deposited $69,361 in second-draw PPP loan proceeds in the Breakout Strategies credit union account in Kent County, in the Western District of Michigan. Defendant used the second-draw PPP loan proceeds for personal expenses and purchases, including Defendant's wedding, in Florida, in May 2021.

8. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

9. <u>Non-Prosecution Agreement</u>. The U.S. Attorney's Office for the Western District of Michigan agrees, except for crimes of violence and criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute Defendant for conduct relating to Defendant's application for, and receipt of, PPP loan proceeds for Breakout Strategies Corporation. Defendant understands that the U.S. Attorney's Office is free to prosecute Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

10. <u>Prison Placement</u>. The U.S. Attorney's Office will not object to a request by Defendant that the Court recommend that Defendant be confined at any particular institution. Both parties acknowledge that the Bureau of Prisons, in its sole discretion, decides prison placement

and that, while the Bureau often gives deference to a Court's recommendation, the Bureau is not required to follow the Court's recommendation.

11. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the pleas.

12. <u>The Parties Jointly Agree to the Following</u>:

a. <u>Stipulations Regarding Guideline Factors</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| <u>Base Offense Level</u>: | 7 | [USSG § 2B1.1(a)(1)] |
| <u>Specific Offense Characteristics</u>: | | |
| Loss between $150,000 and $250,000 | 10 | [USSG § 2B1.1(b)(1)(F)] |
| Sophisticated Means | 2 | [USSG § 2B1.1(b)(10)(C)] |
| <u>Adjusted Offense Level</u>: | 19 | |

Defendant and the U.S. Attorney's Office each reserve the right to argue that additional specific offense characteristics, adjustments and departures are appropriate.

b.   <u>Stipulations Regarding Criminal History</u>.   There is no agreement as to Defendant's criminal history or criminal history category.

c.   <u>Stipulations Not Binding in Court</u>.  Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  Both Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence.  Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, Defendant cannot, for that reason alone, withdraw his guilty pleas.

13.   <u>Waiver of Constitutional Rights</u>.  By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.  As a result of Defendant's guilty pleas, there will be no trial.  At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a.   The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.   The right to be presumed innocent and to have the burden of proof placed on the government to prove Defendant guilty beyond a reasonable doubt.

c.   The right to confront and cross-examine witnesses against Defendant.

d.   The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f. By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

14. <u>FOIA Requests.</u>  Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

15. <u>The Court is not a Party to this Agreement</u>.  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty pleas, and he will remain bound to fulfill all of his obligations under this agreement.  Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

16. <u>This Agreement is Limited to the Parties</u>.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.  This agreement applies only to crimes

committed by Defendant.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

17. <u>Consequences of Breach</u>.  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement.  In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.  In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.  Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

18. <u>This is the Complete Agreement</u>.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

<br><br>

|  | MARK A. TOTTEN<br>United States Attorney |
|---|---|
| _12/6/2022_<br>Date | _Adam B. Townshend_<br>ADAM B. TOWNSHEND<br>Assistant United States Attorney |

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_12/6/2022_
Date

_[signature]_
KURTIS JAMES VANDERMOLEN
Defendant

I am Kurtis James VanderMolen's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_12/6/2022_
Date

_[signature]_
PARKER DOUGLAS
Attorney for Defendant